**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Friday, March 4, 2011.

Present:  Kinser, C.J., Lemons, Goodwyn and Millette, JJ., and Carrico, Russell and Koontz, S.JJ.

Anthony Bernard Juniper,                                    Petitioner,

   against                    Record No. 062556

Warden of the Sussex I State Prison,                        Respondent.

Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed December 11, 2006, and the May 1, 2007 petition for a writ of habeas corpus filed in compliance with the Court's March 2, 2007 order, the respondent's motion to dismiss and petitioner's opposition to the motion to dismiss, the Court is of the opinion that the motion to dismiss should be granted and the writ should not issue.

Anthony Bernard Juniper was convicted in the Circuit Court of the City of Norfolk of four counts of capital murder, one count of statutory burglary, and four counts of use of a firearm in the commission of a felony.  The jury fixed Juniper's punishment at death for each of the four capital murder convictions and at life plus eighteen years' imprisonment for the remaining convictions. The trial court sentenced Juniper in accordance with the jury verdict.  This Court affirmed Juniper's convictions and upheld the

sentences of death in <u>Juniper v. Commonwealth</u>, 271 Va. 362, 375-76, 626 S.E.2d 383, 393, <u>cert. denied</u>, 549 U.S. 960 (2006).

In claim (I), petitioner alleges that the Commonwealth failed to disclose exculpatory information to petitioner as required by <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), presented false testimony or allowed it to go uncorrected in violation of <u>Napue v. Illinois</u>, 360 U.S. 264, 269-70 (1959) and <u>Giglio v. United States</u>, 405 U.S. 150, 153 (1972), and made misleading representations to jurors.

As the Court has stated previously:

> In <u>Brady</u> [], the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Id.</u> at 87. Whether evidence is material and exculpatory and, therefore, subject to disclosure under <u>Brady</u> is a decision left to the prosecution. Inherent in making this decision is the possibility that the prosecution will mischaracterize evidence, albeit in good faith, and withhold material exculpatory evidence which the defendant is entitled to have under the dictates of <u>Brady</u>. If the defendant does not receive such evidence, or if the defendant learns of the evidence at a point in the proceedings when he cannot effectively use it, his due process rights as enunciated in <u>Brady</u> are violated.
>
> . . . .
>
> Exculpatory evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. "A reasonable probability" is one which is sufficient to undermine confidence in the outcome of the proceeding.

<u>Muhammad v. Warden</u>, 274 Va. 3, 3, 646 S.E.2d 182, 186 (2007) (internal citations omitted) (quoting <u>Muhammad v. Commonwealth</u>, 269

2

Va. 451, 510, 619 S.E.2d 16, 49-50 (2005) (quoting Bowman v. Commonwealth, 248 Va. 130, 133, 445 S.E.2d 110, 111-12 (1994)).

When considering the failure to disclose pretrial statements by witnesses, this Court has recognized that such information constitutes favorable evidence to the accused to the extent that it is useful for impeachment purposes. Correll v. Commonwealth, 232 Va. 454, 465, 352 S.E.2d 352, 358 (1987).

> The nondisclosure of such evidence, however, requires reversal "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." Evidence is material in this sense "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

Id. (internal citations omitted).

Furthermore, this Court has previously held that, "[i]n order to find that a violation of Napue occurred . . ., we must determine first that the testimony [at issue] was false, second that the prosecution knew of the falsity, and finally that the falsity affected the jury's judgment." Teleguz v. Commonwealth, 273 Va. 458, 492, 643 S.E.2d 708, 729 (2007).

In the first portion of claim (I), petitioner contends that the Commonwealth failed to disclose the promise to informant Ernest Smith that the prosecutor would "try and do something after [Smith] testified to help [him] with [his] sentence." Additionally, petitioner contends that the Commonwealth told Smith to "say whatever [he] had worked out with the detectives." In support of his claim, petitioner relies on the affidavit of Smith, the motion for a reconsideration of Smith's sentences filed after Smith's testimony, and the hearing on that motion, in which the Commonwealth

3

joined, held shortly after petitioner was sentenced to death.

The Court holds that this portion of claim (I) is without merit. The record, including Smith's affidavit, the affidavit of the prosecutor and the transcript of the reconsideration hearing, demonstrates that Smith asked for a deal but that the prosecutor made no promises or deals with Smith in exchange for his testimony. Subsequently, the Commonwealth joined Smith's motion to reconsider sentence because Smith testified twice at petitioner's trial and because Smith was receiving threats as a result of his cooperation.

In the second portion of claim (I), petitioner alleges that the Commonwealth failed to disclose to petitioner that Keon Murray testified falsely against him. Petitioner alleges that police detectives created the story that Murray related at trial and threatened to charge him with being an accessory after the fact if Murray did not comply. Petitioner further contends that after Murray invoked his Fifth Amendment right and refused to testify, Murray was removed from the courtroom and the prosecutor threatened Murray by telling him that if he did "not testify as instructed" he would be charged with capital murder and would face the death penalty.

The record reveals that none of the alleged evidence was favorable to petitioner. The record, including the trial transcripts, demonstrates that Murray was removed from the courtroom while the prosecutor and defense counsel discussed whether the prosecutor would offer Murray immunity, and was returned only after the court accepted the prosecutor's plan to grant immunity to Murray. In addition, the trial transcript and the affidavits of the

4

prosecutor and the detectives demonstrate that the prosecutor did not threaten Murray with criminal charges related to the murder. Murray's taped statement to police implicated petitioner and thus was not exculpatory.

In the third portion of claim (I), petitioner alleges that the Commonwealth failed to disclose to petitioner that Terence Fitzgerald was "directed ... to conceal certain information when testifying." Relying on the affidavit of Fitzgerald, petitioner contends that Fitzgerald was told to conceal his sexual relationship with Keshia Stephens, one of the victims, and his knowledge of the "foot traffic" at Keshia's apartment. Petitioner contends further that "[p]rosecutors failed to reveal that Fitzgerald reported to police that the only person he thought could have committed the crimes 'was someone who had been pistol whipped by some friends of Keshia's brother'" and that Fitzgerald had seen "a car parked on the corner of [Keshia's] street with three black men in it who were watching him and the kids closely as they left for school" on the day of the murders. Petitioner contends the prosecution "also unconstitutionally failed to reveal that they told Fitzgerald that, in exchange for his testimony against Juniper, they would not 'make trouble for [him]' concerning other charges."

The record reveals that none of the alleged evidence was favorable to petitioner or it was known to petitioner prior to trial. The record, including the trial transcript and Fitzgerald's affidavit, demonstrates that there is no evidence that Fitzgerald told police about "a very bad feeling" he had about the car or the

5

men inside it, or that the information the prosecutor allegedly wanted him to conceal included his sexual relationship with Keshia or the "foot traffic" at her apartment. Petitioner fails to articulate how the sexual nature of Fitzgerald's relationship with Keshia would have been relevant, and the record, including notes prepared by petitioner's investigator, Wayne Kennedy ("Investigator Kennedy"), demonstrates that defense counsel was aware of the "foot traffic" and that Fitzgerald was considered to be Keshia's "sugar daddy."

Furthermore, Fitzgerald's theory, expressed during the investigation, that Keshia was killed by "someone who had been pistol whipped by some friends of Keshia's brother," was disclosed to petitioner in the pre-sentence report. This claim, therefore, is barred because this non-jurisdictional issue could have been raised in a motion for a new trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215 Va. 27, 29-30, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975).

In addition, petitioner alleges that Fitzgerald was at the apartment the day after the murders and that he noticed what appeared to be blood on the carpet in the hallway between the living room and the bathroom as well as in the bathtub in one of the bathrooms. Petitioner contends that this information would have undermined the Commonwealth's theory that "the murders occurred solely in the bedroom and that the incident occurred in a very

6

compressed time frame."

The record reveals that none of this alleged evidence was favorable to petitioner. The record, including the trial transcript, Fitzgerald's affidavit, and the affidavits of co-counsel, demonstrates that the jury was presented with evidence concerning where blood was found on the day of the murders, including the testimony of several forensic investigators, photographs, and a video tape of the crime scene as it existed on the day of the murders. How the crime scene appeared the following day after the apartment was no longer secure would not have been relevant.

In the fourth portion of claim (I), petitioner alleges that the Commonwealth failed to disclose to petitioner that Tyrone Mings had provided inconsistent accounts about what he had seen at Keshia's apartment, including his initial failure to report that he had seen petitioner inside the apartment with a gun, and that Mings' account that both 911 telephone calls were made from Melinda Bowser's apartment was inconsistent with the timeline based on information reported in 911 telephone calls related to the shooting. Petitioner asserts that the 911 telephone call log would have shown that the first call took place at a pay phone about a half-mile away from the apartment instead of in Bowser's apartment, as Mings had testified. Petitioner contends that Mings could not have made the phone call from the pay phone and have returned to the apartment in order to see the police leaving.

The Court holds that this portion of claim (I) is without merit. Pursuant to Brady, there is no obligation to produce information known to the defense. See Fullwood v. Lee, 290 F.3d

7

663, 686 (4th Cir. 2002), <u>cert.</u> <u>denied</u> 537 U.S. 1120 (2003); <u>Cherrix</u> <u>v. Commonwealth</u>, 257 Va. 292, 303, 513 S.E.2d 642, 649, <u>cert.</u> <u>denied</u>, 528 U.S. 873 (1999).  The record, including the trial transcripts and Investigator Kennedy's notes, demonstrates that Mings told Investigator Kennedy, petitioner's investigator, that he and Bowser walked to a nearby convenience store and used a pay phone to make the initial call.  Furthermore, Mings told Investigator Kennedy that he had seen petitioner with the gun in his hand in the apartment.  The trial transcript demonstrates that counsel was aware of Mings' failure to mention seeing Juniper in the apartment in his first statement to police, as demonstrated by counsel's cross-examination of Mings on this issue.  Counsel knew of the information, and consequently there was no <u>Brady</u> violation.

In the fifth portion of claim (I), petitioner alleges that the Commonwealth failed to disclose to petitioner that John Jones provided "crucially inconsistent statements" to the police, where he first denied any knowledge of the murders, then later implicated petitioner, and that he was "released on conditions requiring [his] extensive cooperation with the police."  Petitioner contends that this "exculpatory" evidence could have established Jones' involvement in the crime.

The Court holds that this portion of claim (I) is without merit.  The record, including the trial transcripts and a newspaper article published prior to Juniper's arrest, demonstrates that information was publicly available prior to trial, that the police had questioned Jones, and that Jones had initially denied any involvement.  Furthermore, Jones did not testify, and consequently

8

could not have been impeached.  Therefore, no <u>Brady</u> violation occurred.

In the sixth portion of claim (I), petitioner alleges that the Commonwealth failed to disclose to petitioner Chaunte Hodge's identity and the statements Hodge and her mother-in-law, Mrs. Frazier, made to police that Mrs. Frazier did not hear any unusual noises from the apartment during the time that the murders occurred.

The record, including Investigator Kennedy's notes, demonstrates that defense counsel were aware of Chaunte Hodge and had attempted to contact her.  Petitioner has not alleged that Mrs. Frazier's alleged failure to hear anything unusual on that date establishes that the murders did not occur or that petitioner was not the perpetrator.  Therefore, any failure to disclose the evidence does not constitute a <u>Brady</u> violation.

Petitioner argues that all of the allegedly exculpatory evidence must be considered in its totality when determining the materiality of the evidence. Petitioner is correct that when considering materiality, we consider suppressed evidence as a whole, not item by item. <u>See</u> <u>Workman v. Commonwealth</u>, 272 Va. 633, 645, 636 S.E.2d 368, 375 (2006); <u>Kyles v. Whitley</u>, 514 U.S. 419, 436 (1995). The Court holds that all of the allegedly exculpatory evidence upon which petitioner relies was either available to petitioner or was not favorable.  <u>See</u> <u>Workman</u>, 272 Va. at 644-45, 636 S.E.2d at 374; <u>Muhammad</u>, 274 Va. at 13, 646 S.E.2d at 191.

In the first portion of claim (II)(A), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate Renee Rashid's pretrial statements to police.

Petitioner contends that Rashid's statements were inconsistent and contradictory and that counsel should have investigated them. In addition, petitioner argues that counsel should have used impeachment evidence against Rashid, including Michael Lassiter's opinion that Rashid was a compulsive liar and drug addict.

The Court holds that this portion of claim (II)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the affidavits of counsel and the trial transcripts, demonstrates that counsel cross-examined Rashid regarding inconsistencies in Rashid's statements to police. Although petitioner suggested Lassiter as an alibi witness, Lassiter could not provide counsel with an alibi for petitioner. Moreover, if Lassiter had testified during the guilt phase of the trial, the prosecution could have impeached him with an audiotape of a telephone conversation between petitioner, who was in jail, and Lassiter, which revealed a plot to concoct an alibi for petitioner. Counsel made a tactical decision, based upon the unlikelihood that the court would permit testimony about Rashid's drug use for impeachment purposes, to preserve the viability of Lassiter as a witness during the sentencing phase, rather than put him on the stand at trial and risk the possibility that he might be perceived negatively. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the second portion of claim (II)(A), petitioner alleges he

was denied the effective assistance of counsel because counsel failed to investigate Keon Murray more fully. Petitioner first contends that counsel were ineffective for failing to discover the information that he contends the Commonwealth withheld, specifically evidence "that police told Murray that they knew *he* committed the murders and identified other co-suspects, that Murray failed a polygraph test about the crimes, that police provided Murray with details about the crimes, and that Murray agreed to testify as directed by police in order to avoid threatened criminal charges."

The Court holds that the portion of claim (II)(A) concerning petitioner's allegation that counsel was ineffective for failing to discover certain evidence regarding the interrogation tactics used by police when Murray was being interviewed satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavits of counsel, the trial transcript and Investigator Kennedy's notes, demonstrates that Investigator Kennedy spoke with Murray on multiple occasions. Murray told Investigator Kennedy that he had not been involved in the crime and did not know the individuals involved, and that "if a Keon is involved in this investigation it is most likely another Keon." Murray also told Investigator Kennedy that he was providing to Investigator Kennedy the same answers he had given to the police. Counsel cross-examined Murray about the inconsistencies between his testimony and his statements to Investigator Kennedy. Moreover, Murray testified that it was Investigator Kennedy, and not the police investigators, who threatened him that he could be charged with being an accessory to murder if he did not testify.

11

Petitioner fails to articulate what additional actions counsel could have taken or how counsel could have used the information concerning the police investigators' tactics. Consequently, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of petitioner's claim that he was denied the effective assistance of counsel concerning counsel's handling of the investigation of Murray and use of information for impeachment purposes, petitioner alleges that counsel were on notice concerning Murray's poor reputation for honesty and failed to investigate the inconsistencies in Murray's statements to defense investigators, including statements that he had participated in a two-hour taped interrogation session and that he had never given any type of written or recorded statement. Petitioner contends that counsel also failed to object on Sixth Amendment Confrontation Clause grounds to the court's decision to permit the prosecution to grant him immunity to compel his testimony.

The Court holds that this portion of claim (II)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that counsel unsuccessfully objected on due process grounds to the grant of immunity to Murray. Petitioner fails to assert a valid legal basis upon which he contends counsel could or should have objected to the prosecutor's request or the trial court's grant of immunity. Furthermore, petitioner's right to

confront this witness was not violated because Murray testified and was subject to cross-examination. Moreover, Murray was fully cross-examined by counsel regarding his inconsistent statements to Investigator Kennedy. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the third portion of claim (II)(A), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate Tyrone Mings more fully, although "counsel maintained that Mings was lying," and to develop circumstantial evidence that Mings was involved in the murders. Petitioner also contends that counsel failed to use available information to impeach Mings, such as using information that Keshia "did not work at the Tinee Giant at the time the crimes occurred" to impeach Mings' testimony that "he was trying to contact [Keshia] on the day of the shootings to retrieve [Melinda] Bowser's paycheck." In addition, petitioner contends that counsel should have presented evidence that "it was well known in the neighborhood that Mings frequented the apartment" and should have pointed out in argument that Mings' ability to go "straight to the bedroom" was the result of "his familiarity with the apartment." Petitioner contends that phone records prove that Mings called petitioner's house shortly after his call to "911." Petitioner argues that counsel should have used this evidence, along with "Mings' materially contradictory statements to police," and Bowser's account to police, to impeach Mings' testimony and "to expose Mings and his asserted fear of reprisal from

[petitioner]."

The Court holds that this portion of claim (II)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner speculates, but does not proffer any evidence, that Keshia could not have had Bowser's check simply because she no longer worked at Tinee Giant. Furthermore, the record, including the trial transcript, demonstrates that Mings went to Keshia's apartment because Murray called and told Mings that a shooting had occurred. The diagram of the apartment demonstrates that the apartment was small and that the hallway led directly to the bedrooms. In support of his claim that Mings had previously been inside petitioner's apartment, petitioner relies on the affidavit of Michael Lassiter, who claims that Mings would buy drugs from Keshia. Lassiter does not articulate how he knew about Ming's alleged drug purchases and, in any event, counsel made a tactical decision not to call Lassiter because petitioner had asked Lassiter to help him develop an alibi, which conversation had been recorded. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the fourth portion of claim (II)(A), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate Ernest Smith more fully after petitioner informed counsel and Investigator Kennedy that Smith had contacted homicide detectives and was trying to "get into" petitioner's case. Petitioner argues counsel should have spoken with other inmates "who

14

knew that Smith spoke openly about fabricating evidence against Juniper."  Petitioner contends that, had counsel investigated Smith, they would have learned that Juniper never confessed to Smith.

The Court holds that this portion of claim (II)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the affidavits of counsel, Investigator Kennedy's notes, counsel's notes, and the trial transcript, demonstrates that counsel did not have reason to believe that Smith would testify against petitioner at the guilt phase of the trial, because when counsel confronted petitioner about Smith and other witnesses, whose names were on the Commonwealth's witness list, petitioner "claimed that these witnesses were unimportant third parties or jail house snitches who would not testify."  Additionally, the record, including the Commonwealth's Supplemental Notice of Intent to Present Evidence of Unadjudicated Criminal Conduct and the trial transcript, demonstrates that counsel was informed prior to trial that petitioner had attacked Smith and threatened to kill him while he and Smith were in the medical pod together and, therefore, counsel had no reason to believe Smith would have voluntarily spoken to them about the case.  Additionally, the record contains no evidence to support petitioner's claim that there were other inmates who would testify that Smith spoke about fabricating evidence against Juniper.  Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the fifth portion of claim (II)(A), petitioner alleges he

15

was denied the effective assistance of counsel because counsel failed to investigate Terence Fitzgerald more fully. Petitioner contends that had counsel investigated more fully, counsel would have learned that Fitzgerald was "having sex with [Keshia] and using the apartment as a base of operations to sell drugs." In addition, counsel would have learned of Fitzgerald's statements to police that "'the only people who might have wanted to do this was someone who had been pistol whipped by some friends of Keshia's brother,' and that he saw 'a gray automobile with a missing tag in the parking lot.'" Petitioner contends that had counsel obtained these statements, counsel could have used them at trial and would have learned that the police had suspected and accused Fitzgerald of the crime. In addition, petitioner contends that counsel should have asked Fitzgerald about his personal knowledge concerning the "foot traffic" at Keshia's apartment, which petitioner contends was the result of Keshia and her brother "selling drugs for Fitzgerald from the apartment." Furthermore, petitioner contends counsel should have discovered that Fitzgerald had been at the apartment the day after the murders and that he had seen blood in the hallway and bathroom.

The Court holds that this portion of claim (II)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavits of counsel and Investigator Kennedy's notes, the trial transcripts and the exhibits offered at trial, demonstrates that counsel had no reason to believe that additional investigation of Fitzgerald would have revealed the sexual nature of his relationship with Keshia, as

Fitzgerald had explained to Investigator Kennedy that he felt sorry for Keshia when he discussed the rumors that he was her "sugar daddy." The trial court ruled that evidence concerning the "foot traffic" at the apartment was inadmissible because it was irrelevant. Counsel had no right to review Fitzgerald's statements to police unless they contained exculpatory evidence, which petitioner fails to allege was the case. Fitzgerald's speculation that someone "who had been pistol whipped by some friends of Keshia's brother," may have been responsible for the murders is unsupported by any evidence. Fitzgerald does not state that he told police about the men in a car, and Investigator Kennedy's notes reveal that Fitzgerald did not share this information with Investigator Kennedy. Finally, Fitzgerald does not state that he told anyone about the blood he saw in the apartment the day after the murders, and his observations would have had little relevance as there was ample evidence presented at trial concerning the location of blood at the time the murders were discovered. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the sixth portion of claim (II)(A), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate John Jones more fully. In support of this claim, petitioner proffers that "Renee Archibald told counsel that Jones was a violent, controlling person who hated [Keshia]; Jones was possessive of Juniper and resented the fact that Juniper let

[Keshia] come before him."  Petitioner contends that had counsel more fully investigated Jones, counsel could have used this information to support petitioner's "alibi defense and challenge the Commonwealth's evidence and theory that [petitioner] alone committed the murders and bore sole culpability."  Petitioner notes that evidence indicating he did not act alone, or that a sole perpetrator did not commit the crimes, would have undermined confidence in the jury's determination that death was the appropriate sentence.

The Court holds that this portion of claim (II)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the affidavits of counsel, the trial transcripts and the police reports, demonstrates that Jones did not testify at trial, but told the police shortly after his initial interrogation that he had, in fact, seen petitioner emerging from the apartment with a gun in his hand. Although Archibald was interviewed prior to trial, neither counsel's nor Investigator Kennedy's notes mention Archibald ever stating that Jones was violent or hated Keshia.  Petitioner does not explain how Jones' reputation for violence or his hatred of Keshia would have supported an alibi defense, or undermined evidence that petitioner, alone, committed the murders.  Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the seventh portion of claim (II)(A), petitioner alleges he was denied the effective assistance of counsel because counsel were on notice, pursuant to the presentence report, that Bowser,

18

Fitzgerald, and Jones had given statements to the police. Petitioner contends that the Commonwealth concealed these statements and that counsel "unreasonably failed to develop and present this evidence – after being put on notice by the presentence report – through motion for mistrial, continuance, or other appropriate vehicle."

The Court holds that this portion of claim (II)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to articulate what information counsel would have developed, the basis upon which counsel should have moved for a mistrial, or that the statements contained exculpatory or impeachment evidence. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (II)(B), petitioner alleges he was denied the effective assistance of counsel because counsel failed to adequately investigate Michael Lassiter, who purportedly could have provided an alibi defense.

The Court holds that this portion of claim (II)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavits of counsel, demonstrates that counsel spoke with Lassiter, but Lassiter never provided petitioner an alibi. Counsel chose not to present Lassiter as a witness during the guilt phase of the trial because the Commonwealth possessed an audio recording of a conversation between Lassiter and petitioner, in which the two were

attempting to fabricate an alibi. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the second portion of claim (II)(B), petitioner alleges he was denied the effective assistance of counsel because counsel failed to adequately investigate Keshia Stephens. Petitioner contends counsel failed to discover that Keshia "had stolen at least two kilos from a drug dealer she was involved with," and asserts that "[w]hether true or not, this rumor alone would have made her a target." Petitioner contends further that Keshia "was a regular drug user, [who] would rob people and have sex for money and drugs." Petitioner alleges that Keshia's "brother, Ruben Harrison III, also engaged in behavior that put him at risk," and that Mings "frequented the apartment because he was selling some of the drugs stashed there."

The Court holds that this portion of claim (II)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavits of counsel, demonstrates that counsel chose not to present evidence attacking the victims' lifestyles, because counsel did not believe this evidence would have exculpated petitioner, and because counsel did not want to risk offending the jury. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the third portion of claim (II)(B), petitioner alleges that

20

he was denied the effective assistance of counsel because counsel failed to adequately investigate Kevin Waterman, one of Keshia's neighbors, who told police that he heard four gunshots in Keshia's apartment around 1:30 p.m.

The Court holds that this portion of claim (II)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavits of counsel and Waterman, demonstrates that counsel made a tactical decision not to call Waterman as a witness. Even accepting Waterman's affidavit that he heard gunshots in the general vicinity of the apartment building between 1:30 and 2:00 p.m. on the day of the murders, counsel could not reconcile this information with the other evidence that the murders occurred earlier in the day. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (II)(C), petitioner alleges he was denied the effective assistance of counsel because "counsel unreasonably failed to investigate and present evidence from the letters and other documents of Keshia Stephens." Petitioner contends that if counsel had investigated these letters they would have determined that Keshia "was dishonest and willing to cheat people," and "was leading an increasingly dangerous lifestyle defined by multiple sex partners, drugs, and duplicity." In support of this claim, petitioner submits a letter written by Keshia "explaining (untruthfully) why she was terminated from her job at the Tinee

21

Giant."  Petitioner contends that counsel could have used this letter in cross-examination of Mings, who testified that he had gone to Keshia's apartment in part to get a check for Bowser, who worked at the Tinee Giant.  In addition, petitioner relies on a copy of "an opened letter to Fitzgerald from his probation officer, setting up a meeting time for January 5, 2004," which petitioner contends would have rebutted Fitzgerald's testimony that he had stopped going to the apartment.

The Court holds that claim (II)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the letters upon which petitioner relies and the affidavits of counsel, demonstrates that the letters had little value to petitioner's case.  As for Keshia's letter, the letter does not negate Mings' reasons for going to the apartment and counsel made a tactical decision not to attack Keshia's lifestyle at trial.  The Fitzgerald letter upon which petitioner relies contains no recipient address and was dated weeks before the murders.  Petitioner proffers no other letters or documents in support of this claim.  Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (II)(D), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate the time of the shootings.  Petitioner contends that a time of death was not established by the medical examiner, and petitioner's alibi, together with Keith Waterman's testimony that he

22

heard shots between 1:30 p.m. and 2:00 p.m., would have refuted evidence that petitioner was in the apartment at the time of the murders. Although police first arrived on the scene at 12:50 p.m. and left at 1:12 p.m., they did not go into the apartment or confirm that anyone had been killed. Petitioner contends that evidence that the murders occurred at the time Waterman heard the shots would have created reasonable doubt as to petitioner's involvement in the crime.

The Court holds that this portion of claim (II)(D) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the affidavits of counsel, demonstrates that counsel's failure to establish a timeline did not constitute ineffective assistance where neither the police, medical examiner, forensic laboratory, nor prosecutor could, based upon the evidence, eliminate all uncertainty as to the time of the shootings. Petitioner never provided counsel an alibi, and he cannot show that he was prejudiced by his counsel's inability to establish a timeline for the commission of the murders. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (II)(E), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate the forensic evidence. He contends that counsel should have investigated whether the two different brands of nine millimeter bullets recovered from the scene "came from more than one

gun," as well as certain unidentified fingerprint and DNA evidence found at the scene, by hiring their own forensic expert to conduct independent fingerprint, ballistics and DNA testing or to review the work of the state's lab. Further, he contends that counsel should have fully investigated Fitzgerald to discover the blood evidence that refuted the Commonwealth's theory concerning how the murders occurred.

The Court holds that this portion of claim (II)(E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the affidavit of petitioner's counsel, demonstrates that counsel determined that there was not a particularized need for a forensic expert in this case, and therefore did not request one. Petitioner has not identified a particularized need for the expert, or set forth any reason to believe that a forensic expert would be able to obtain fingerprint or DNA results that the Commonwealth's forensic laboratory would not. The fact that two different brands of bullets were recovered does not refute the Commonwealth's evidence that both brands of bullets were fired from the same gun. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (II)(F), petitioner alleges he was denied the effective assistance of counsel because counsel "failed to follow through on" certain theories of defense. Petitioner contends that counsel did not present evidence from Michael Lassiter that

24

petitioner had an alibi, and that "others were present at the crime scene that morning." Petitioner contends further that counsel should have investigated "possible motives of others for the murders," and discovered that "several of the players involved were cold and calculating individuals, capable of committing a crime like this." Petitioner alleges that, had counsel "investigated possible motives," they would have developed "critical evidence bolstering and substantiating" their theory "that there was drug dealing and prostitution going on inside the apartment." Counsel also would have been able to present evidence of Ruben Harrison's recent rape conviction and that Harrison's "friends had recently pistol-whipped an individual." Petitioner contends further that counsel would have discovered that "the police did a bad job [of] collecting evidence."

The Court holds that this portion of claim (II)(F) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the affidavits of counsel, demonstrates that neither petitioner nor Lassiter provided an alibi for petitioner and that petitioner's numerous theories and alleged motives for the murders were not supported by any evidence. Furthermore, counsel made a tactical decision not to "make an issue" of Harrison's rape conviction, because details of the offense did not provide a motive for the murders and counsel did not want to appear to "smear one of the victims." Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

25

In claim (II)(G), petitioner alleges he was denied the effective assistance of counsel because counsel failed to renew petitioner's motion for a change of venue. Petitioner contends he was "entitled to a change of venue because media coverage was intense" and counsel had met the burden of presenting numerous prejudicial news accounts of petitioner and the crimes with which he was charged. The record, including the pre-trial transcripts, demonstrates that counsel moved for a change of venue a few weeks prior to trial, and the trial court took the matter under advisement. Petitioner cites the opinion from his direct appeal, where we held the issue to be barred on appeal because counsel did not timely renew the motion or bring it to the attention of the trial court. Juniper, 271 Va. at 384, 626 S.E.2d at 398. Petitioner contends that had counsel renewed the motion, "there is a reasonable probability of a different outcome."

The Court holds that claim (II)(G) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that the evidence did not support a finding that the media coverage had been extensive or warranted a change in venue. Petitioner fails to allege that his motion would have been granted had he renewed it or even that he could have met his burden to establish that the media coverage at the time of trial was so pervasive "as to make it reasonably certain" that he could not receive a fair trial. Mackall v. Commonwealth, 236 Va. 240, 250, 372 S.E.2d 759, 766 (1988). Petitioner has failed to demonstrate that counsel's performance was deficient. Furthermore, petitioner

26

has failed to demonstrate that a renewed motion for a change of venue would have been successful or that, in a different venue, the result of the criminal proceeding would have been different.

In claim (II)(H), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object when the trial court changed the questions it used in voir dire. Petitioner contends that counsel did not object when the trial court "simplified 'substantially impair' to 'very difficult.'" Petitioner alleges that the two terms are defined differently and that "very difficult" is a higher burden than "substantially impair." Petitioner argues that jurors whose beliefs "substantially impaired" their decision making would not have admitted so if their beliefs did not also make their decision making "very difficult." Petitioner contends further that this Court did not reach the issue on direct appeal because counsel failed to preserve the claim. Juniper, 271 Va. at 385-86, 626 S.E.2d at 399.

The Court holds that claim (II)(H) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to allege that any juror held beliefs that "substantially impaired" his or her decision-making process, and fails to allege that the issue would have had merit on appeal had it been properly preserved at trial. Petitioner has failed to demonstrate that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (II)(I), petitioner alleges he was denied the effective assistance of counsel because counsel "failed to seek files from the Commonwealth." Petitioner contends that counsel

27

requested "police files" pertaining to petitioner's "unadjudicated criminal conduct and to Ruben Harrison III's recent rape conviction."  According to petitioner, counsel cited no valid legal principles that would have required the release of the files.  Petitioner contends that, if counsel had raised the appropriate arguments, either the trial court would have ordered the police to share these exculpatory files or the issue would have been preserved for appeal.

The Court holds that claim (II)(I) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  A defendant in a capital case is entitled to notice of the Commonwealth's intention to rely on unadjudicated criminal conduct at sentencing.  Code § 19.2-264.3:2 requires, concerning the Commonwealth's intention to rely on unadjudicated criminal conduct, that the Commonwealth give written notice, including a description of the conduct and, "to the extent such information is available, the time and place such conduct will be alleged to have occurred."  Petitioner has failed to identify the legal authority upon which he contends counsel could have argued for the underlying police files regarding his unadjudicated criminal conduct and has failed to establish that he was entitled to the underlying police files of the victim's rape conviction.  Petitioner has failed to demonstrate that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (III), petitioner alleges his trial counsel suffered from an unconstitutional conflict of interest. Petitioner contends

28

that the investigator hired to work with his defense team had previously "represented" Ernest Smith on an unrelated "rape/abduction case."  Petitioner argues that counsel should have investigated and discovered the conflict and should have revealed that conflict to petitioner.

The Court holds that claim (III) is barred by Code § 8.01–654(B)(2) and Dorsey v. Angelone, 261 Va. 601, 604, 544 S.E.2d 350, 352 (2001), as well as by the applicable statute of limitations set forth in Code § 8.01–654.1.  Pursuant to Code § 8.01–654.1, petitioner had until December 11, 2006 to file his petition for a writ of habeas corpus.  Petitioner filed a petition for a writ of habeas corpus on that date that did not comply with the page limitations found in Rule 5:7A(g), along with a motion for leave to file an oversized petition.  Petitioner was ordered on January 24, 2007 to file a petition in compliance with Rule 5:7A(g) no later than January 29, 2007.

On January 26, 2007, petitioner filed a request for an emergency stay of the Court's January 24, 2007 order because his habeas counsel had determined that a potential conflict existed.  Habeas counsel learned on January 24, 2007 that she formerly represented informant Ernest Smith in a criminal matter in 2001, and that Investigator Kennedy, who was hired as petitioner's habeas investigator, also investigated the case on behalf of Smith.

On January 29, 2007, petitioner filed a 50-page petition for a writ of habeas corpus that did not include a claim related to the investigator's alleged conflict of interest.  On February 1, 2007,

this Court denied the motion to stay the Court's January 24, 2007 order as moot and directed the parties to brief the conflict issue. Thereafter, counsel moved to withdraw and requested the appointment of new counsel and the opportunity to file a new petition for a writ of habeas corpus.  On March 2, 2007, this Court granted counsel's request to withdraw, appointed new counsel, and granted petitioner 60 days in which to file an amended petition, if necessary.

On May 1, 2007, petitioner filed the instant petition for a writ of habeas corpus pursuant to the Court's March 2, 2007 order, in which claim (III) was raised for the first time.  Claim (III), therefore, the facts of which were known prior to petitioner's January 29, 2007 petition for a writ of habeas corpus, was not previously raised, and was not raised until after the expiration of the applicable statute of limitations.

In claim (IV)(A), petitioner alleges he was denied the effective assistance of counsel during the sentencing phase of his trial because counsel failed to "discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor."  See Wiggins v. Smith, 539 U.S. 510, 524 (2003).  Petitioner contends that counsel failed to adequately investigate petitioner's family and social background and, as a result, failed to discover that petitioner has a family history of serious mental illness.

The Court holds that claim (IV)(A) satisfies neither the

30

"performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the affidavits of counsel and a memorandum counsel wrote to petitioner's client file on January 25, 2005, demonstrates that both petitioner and his family members were uncooperative. Petitioner insisted, "he would rather be executed than spend his life behind bars," and "discouraged potential mitigation witnesses from providing counsel with useful information." When approached by counsel, petitioner's relatives, including his mother, refused to cooperate or testify. Moreover, petitioner never mentioned to his trial counsel a possible mitigation witness who he contends could have provided information regarding his family's or his alleged mental health issues. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B), petitioner alleges he was denied the effective assistance of counsel during the sentencing phase because counsel failed to present rebuttal evidence to the aggravating evidence introduced by the prosecution. He contends that counsel failed to investigate the alleged prior acts of violence against Keshia, including an incident where petitioner allegedly bound her with duct tape and tortured her with a stun gun, and did not present evidence, including the testimony of witnesses, to rebut the prosecution's allegations.

The Court holds that claim (IV)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test

enunciated in Strickland.  The record, including the trial transcript, demonstrates that counsel presented evidence at trial consistent with what petitioner told police as to how Keshia's previous injuries occurred, including testimony of a police investigator that petitioner made a comment and then said "that she duct taped herself," which the officer understood to mean that Keshia "could charge [petitioner] with abduction and he could get 50 years."  Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(C), petitioner alleges he was denied the effective assistance of counsel during the sentencing phase because counsel encouraged the jury to impose the harshest penalty possible when she argued, "If the goal here is to punish him, then make him suffer . . . . Don't put him to death like a sick animal and put him out of his misery.  The ultimate punishment here is time."  Petitioner contends that this statement was equivalent to asking the jury not to have sympathy or mercy on petitioner but to impose the harshest penalty possible, which in counsel's opinion was life imprisonment.

The Court holds that claim (IV)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the trial transcript, demonstrates that, taken in context, counsel's argument sought to humanize petitioner by invoking images of the abuse petitioner suffered as a child and by asking the jury to show mercy

32

on him by considering any evidence that "in fairness or mercy may extenuate or reduce the degree of moral culpability and punishment." In addition, counsel asked the jury, if it were to seek the ultimate punishment, to do so by sentencing petitioner to life. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(D), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object to Virginia's only available means of execution, which he contends violates his "Eighth Amendment guarantees as contrary to contemporary norms and standards and offending the dignity of the person and society because they create an unreasonable risk of unnecessary physical and psychological pain." The Court holds that claim (IV)(D) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. This Court has held that a Virginia prisoner has no constitutional claim regarding lethal injection because he can choose execution by electrocution, which this Court has repeatedly held does not violate the Eighth Amendment. Orbe v. Johnson, 267 Va. 560, 562, 601 S.E.2d 547, 549 (2004). Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(E), petitioner alleges he was denied the effective assistance of counsel because counsel failed to protect

33

his confidentiality when counsel requested petitioner's school records via a subpoena duces tecum rather than by using a release signed by Juniper. Petitioner contends that because the documents were sent to both defense counsel and to the prosecution, the prosecution discovered that Juniper had several incidents of unadjudicated criminal conduct while he was incarcerated at the Hampton Roads Regional Jail.

The Court holds that claim (IV)(E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record demonstrates that counsel knew that the Commonwealth either had obtained or was in the process of obtaining petitioner's school records, thus there was no need for secrecy. Petitioner, therefore, was not prejudiced by counsel's decision to pursue receipt of the records through the issuance of a subpoena. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(F), petitioner alleges he was denied the effective assistance of counsel at the sentencing phase because counsel failed to ensure that the jurors were properly instructed. He contends that the verdict form was improper in that it required only that the jurors unanimously find that "either" aggravating circumstance was proven beyond a reasonable doubt, without requiring jurors to agree on which of the aggravating factors existed.

The Court holds that claim (IV)(F) satisfies neither the "performance" nor the "prejudice" prong of the two-part test

34

enunciated in Strickland.  The record, including the trial transcript, written jury instructions, and verdict forms, demonstrates that the jury was properly instructed and that the verdict forms gave the jury the option to find either or both aggravating factors beyond a reasonable doubt.  See Prieto v. Commonwealth, 278 Va. 366, 406, 682 S.E.2d 910, 931 (2009), cert. denied, ___ U.S. ___, 130 S.Ct. 3419 (2010).  Jurors are presumed to follow the trial court's instructions.  Muhammad, 269 Va. at 524, 619 S.E.2d at 58.  Furthermore, the jury unanimously found beyond a reasonable doubt that petitioner "would commit criminal acts of violence that would constitute a continuing serious threat to society" and unanimously found beyond a reasonable doubt that petitioner's "conduct in committing the offense was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind and/or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder." Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(G), petitioner alleges he was denied the effective assistance of counsel in the sentencing phase because counsel failed to object to the prosecutor's closing argument that "the only just verdict is the ultimate punishment of death" and that Juniper had written "his own death warrant."  Petitioner contends that the prosecutor's statements were improper because they expressed his personal opinion that petitioner deserved the

35

death penalty.

The Court holds that claim (IV)(G) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the prosecutor's statements did not express his personal opinion, misstate the evidence or mislead the jury. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(H), petitioner alleges he was denied the effective assistance of counsel in the sentencing phase because counsel failed to object to the trial court's future dangerousness instruction. He contends that the word "probability" in the instruction allows for more uncertainty than the "beyond a reasonable doubt" standard, and that the instruction creates an unacceptable risk that the jury used a "probability" standard in judging future dangerousness.

The Court holds that claim (IV)(H) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including trial transcript and jury instructions, demonstrates that the instruction followed the "future dangerousness" language of Code § 19.2-264.4 which this Court has held is not unconstitutionally vague. See, e.g., Stockton v. Commonwealth, 227 Va. 124, 134-35, 314 S.E.2d 371, 378 (1984). Petitioner has failed to demonstrate that counsel's performance was

36

deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V), petitioner alleges the trial court unconstitutionally prohibited petitioner from putting on proper evidence of his lack of future dangerousness.

The Court holds that claim (V) is procedurally defaulted because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29-30, 205 S.E.2d at 682.

In a portion of claim (VI), petitioner alleges he was denied his right to counsel of his choice.

The Court holds that this portion of claim (VI) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Id.

In another portion of claim (VI), petitioner alleges that counsel's actions created an actual conflict of interest between counsel and petitioner, prejudiced him, and denied him the effective assistance of counsel. Petitioner contends that counsel made "a self-serving proffer" regarding whether to put on evidence at the guilt phase of the trial, revealed attorney work product and attorney-client privileged communications, refused to pursue the course of action petitioner had chosen, and made incomplete representations to the court, thus concealing facts from the court's consideration. Petitioner contends counsel failed to tell the court

that Lassiter could confirm petitioner's alibi when counsel were expressing their decision not to call Lassiter during the guilt phase of the trial.

The Court holds that this portion of claim (VI) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel. Morris v. Slappy, 461 U.S. 1, 14 (1983). The record, including the affidavits of counsel and the trial transcript, demonstrates that counsel discussed with petitioner their decisions regarding presenting evidence during the guilt phase and strategic decisions not to call certain witnesses. Furthermore, counsel informed petitioner of his right to testify and his right to decide whether to testify. The trial court explored this issue with petitioner, who informed the court that he had decided not to testify. As discussed previously, neither petitioner nor Lassiter ever provided counsel with an alibi and, therefore, counsel were not being "incomplete" by failing to inform the court of Lassiter's potential alibi testimony. Petitioner contends that counsel's proffers to the court created a conflict of interest, but petitioner does not identify how counsel's loyalties had been divided, or how he was prejudiced. Petitioner has failed to establish either an actual conflict of interest or an adverse effect on counsel's performance. See Mickens v. Taylor, 535 U.S. 162, 171-72 (2002). Therefore, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding

38

would have been different.

In claim (VII), petitioner alleges "[c]ounsel unreasonably failed to argue that an emerging national consensus opposing the authorization and practice of executing people with serious mental illness makes Juniper's death sentence unconstitutional."

The Court holds that claim (VII) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the petition, demonstrates that there is no evidence in the record that petitioner suffers "serious" mental illness and, therefore, such an argument would have been improper if made to a jury. Petitioner fails to provide the argument or controlling authority he contends counsel should have raised in such an argument to a judge. Therefore, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VIII), petitioner alleges he is actually innocent of capital murder.

The Court holds that claim (VIII) is barred because assertions of actual innocence are governed by Code §§ 19.2-327.1 through -327.6, and Code §§ 19.2-327.10 through -327.14, and are outside the scope of habeas corpus review. Lovitt v. Warden, 266 Va. 216, 259, 585 S.E.2d 801, 827 (2003).

Upon consideration thereof, petitioner's "motion for leave to depose the department of forensic science," "motion for funds to hire a psychologist or psychiatrist," "motions for appointment of a

39

DNA expert and discovery of electronic data," "motion for discovery," and motion for an evidentiary hearing are denied.

Upon further consideration thereof, respondent's motions to strike petitioner's original appendix and supplemental appendix are denied. The exhibits contained in the appendices are considered pursuant to the appropriate evidentiary rules. Petitioner's motion to strike respondents' affidavits is denied. The affidavits are considered pursuant to the appropriate evidentiary rules.

Finally, respondent's motion to strike petitioner's third supplemental appendix, volume X, is granted. This appendix is stricken as barred by Code § 8.01-654(B)(2) and Dorsey v. Angelone, 261 Va. 601, 604, 544 S.E.2d 350, 352 (2001), as the exhibits contained therein relate to claims known to petitioner but not presented in either of the previous petitions for a writ of habeas corpus, including the claim relating to trial counsel's prior representation of Ernest Smith, and that petitioner suffered from sleep apnea.

Accordingly, for the reasons stated, the petition is dismissed.

This order shall be published in the Virginia Reports.

A Copy,

Teste:

Patricia L. Harrington, Clerk

40